_[iLOLLEY, J.
After Roy Lee Green (“Green”) was convicted of simple burglary of a religious building, La. R.S. 14:62.6, he was adjudicated a fourth felony offender and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Green now appeals his conviction and sentence. For the following reasons, we affirm.
Facts
Green was charged by Bill of Information for the offense of simple burglary of a religious building. La. R.S. 14:62.6. At the trial of the matter, Shreveport Police officer Todd Eatman testified that on the morning of October 3, 2002, he responded to a call at the Christian Missionary Baptist Church in Shreveport, Louisiana.[1] When Off. Eatman arrived at the church, he noticed a broken window with a chair under it outside of the church. K-9 officer Clint Cain was called to the scene, and he and his dog entered the church. After Off. Cain and his dog entered the church, Off. Eatman entered as well, following the K-9 unit upstairs. When Off. Eatman reached the second floor, he observed Green lying on the floor with the dog standing near him — Green had dog bites to an arm and leg. Off. Eatman observed offering envelopes scattered through the building.
*181 Officer Cain described that he and his dog discovered Green in a second floor bathroom of the church. When Green failed to respond to Off. Cain’s request to exit the bathroom, Off. Cain kicked down the door and his dog grabbed Green by the knee. Green hit the dog in the head, and the dog 1 ¡.then gripped Green by his arm, taking him to the ground. Officer Cain then called his dog off of Green and called for assistance.
Upon arrest, Green was given his Miranda rights and a taped statement was obtained. Both Green’s signed Miranda rights form and taped statement were introduced at his trial. In that taped statement, Green admitted entering the church to find food or something to sell in order to buy drugs.
Finally, Reverend Garner Hodge testified at the trial for the state. Reverend Hodge was the “key man” on behalf of the owner of the building, who for insurance purposes was responsible for assessing the property damage for the owner. At trial, he stated that the building was used only for religious purposes and that Green did not have permission to be inside. Finally, Rev. Hodge testified that the building had a sign signifying it was a church and that it also had stained glass windows.
Upon hearing all the evidence, the trial court found Green to be guilty as charged of simple burglary of a religious building in violation of La. R.S. 14:62.6. Afterward, the state filed a fourth felony habitual offender bill of information, to which Green waived arraignment and pled not guilty. After his multiple offender hearing, the trial court determined Green to be a fourth felony offender pursuant to La. R.S. 15:529.1. The trial court ordered a pre-sentence investigation report be prepared, which the trial court referred to at Green’s sentencing hearing. At the conclusion of Green’s sentencing hearing, he was sentenced by the trial court to life imprisonment, without ^benefit of probation, parole, or suspension of sentence. Green now appeals his conviction and sentence.
Discussion
In his first assignment of error, Green argues that the record fails to show he knowingly and intelligently waived his constitutional right to trial by jury. Specifically, Green acknowledges that the trial court’s minutes show that the trial court advised him of his right to trial by jury, which right he waived. However, Green contends that the record fails to show whether the trial court ascertained that he understood the right he waived. Green’s argument is without merit.
Both the United States Constitution and the Louisiana Constitution expressly guarantee the criminally accused the right to a jury trial. U.S. Constitution Amendment VI; La. Constitution Article I, §§ 16, 17. Louisiana C. Cr. P. art. 780 provides that:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury....
The waiver of the right to a jury trial cannot be presumed. State v. McCarroll, 337 So.2d 475 (La.1976). The waiver must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused. State v. Smith, 447 So.2d 4 (La.App. 3d Cir.1984).
In this case, the record indicates that Green gave a knowing and intelligent waiver of his right to a jury trial, despite his argument to the 1 ¿contrary. Initially, *182 at his preliminary examination, the trial court advised Green of his right to a jury trial, and also advised him that he could waive that right. Further, the trial court at that time instructed Green to “talk to your Attorney about this and let us know what you want to do when this matter is set for trial.” Later, on March 3, 2003, the record reflects that Green chose to waive his right to a jury trial. When this appeal commenced, the record only contained a minute entry dated March 3, 2003, which stated, “[Green] being present with counsel ... waived his right to jury trial.” Green argues that this lone minute entry was insufficient to show that he knowingly waived his right to trial by jury; however, the appeal record was subsequently supplemented with a transcript of the proceeding corresponding to the March 3, 2003, minute entry.[2] That transcript reflects the following:
MR. KIRCUS: May it please the Court, Defendant is ready. However, I discussed this matter at length with the Defendant last evening in the jail, and he has decided that he would ask for a bench trial rather than a Jury trial.
[[Image here]]
THE COURT: All right. Mr. Green, I have been informed by your Attorney that you now want to waive your right to a Jury trial. Is that correct?
MR. GREEN: Yes.
THE COURT: Do you understand the difference between a Judge trial and Jury trial?
MR. GREEN: Yes.
|f;THE COURT: And you want to waive your right to be tried before a Jury in this case. Is that correct?
MR. GREEN: Yes, I do.
THE COURT: Okay. Now, when we start your bench trial, we are not going to change our mind and then say we want a Jury trial. You understand that.
MR. GREEN: Yes.
THE COURT: Okay. You have now waived your right to a trial before a Jury. Mr. Kircus, you have gone over with your client the difference between the two types of trials?
MR. KIRCUS: I have, Your Honor.
Clearly, the record demonstrates that on March 3, 2003, Green was personally informed by the trial court of his right to a jury trial and his option to waive that right. Moreover, the record indicates that during that same proceeding, in the presence of his attorney, Green waived that right to a jury trial and indicated he understood his choice. Accordingly, this assignment is without merit. See, State v. Jones, 1999-2595 (La.App. 4th 11/08/00), 773 So.2d 234, writ denied, 2001-0476 (La.01/04/02), 805 So.2d 1194.
In his second assignment of error, Green maintains that his life sentence as a forth felony habitual offender was an abuse of the trial court’s discretion and constitutionally excessive. In his pro se brief, Green argues that the predicate offenses upon which his forth felony habitual offender sentence was based were inadequate to support a sentence under the habitual offender statute.
|6(After Green’s conviction, the state filed a habitual offender bill of information charging Green as a fourth felony offender, based upon his present conviction and his previous guilty pleas for simple burglary committed on June 13, 1988, simple burglary committed on December 5, 1994, *183 and attempted simple burglary committed on June 14, 1998. No written objection to the proceedings was filed in accordance with La. R.S. 15:529.1(D)(1)(b).
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Gaddis, 36,661 (La.App.2d Cir.03/14/03), 839 So.2d 1258, writ denied, 2003-1275 (La.05/14/04), 872 So.2d 519. Pursuant to this function, the legislature enacted the habitual offender statute, which has been held on numerous occasions to be constitutional. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed to be constitutional. The determination of an appropriate minimum sentence by the legislature should be afforded great deference by the judiciary. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra.
 |7In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:
[He] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. at 676. Additionally, in determining whether Green has met this burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law (here, the mandatory life sentence, without benefit of parole, probation, or suspension of sentence) should occur only in rare instances. Id.
In the case sub judice, Green’s fourth felony conviction and two of his prior felonies (the guilty pleas for simple burglary) were all offenses potentially punishable by imprisonment for twelve years. Thus, pursuant to La. R.S. 15:529.1(A)(1)(c)(ii), the trial court imposed the mandatory life sentence, without benefit of parole, probation, or suspension of sentence. Green now argues that the imposed sentence is excessive in light of his previous criminal history and the fact that any crime he committed was a result of his drug addiction. Nevertheless, Green made no such argument to the trial court nor presented evidence showing his claimed unusual circumstances or that he is the “exceptional” defendant for which downward departure from the statutory maximum was warranted. Moreover, as the | atrial court stated, Green is a “career criminal,” noting his seven felony convictions. We agree. Green’s propensity toward criminal activity, even if he has not committed “crimes of violence,” has obviously not been assuaged by previous sentencing leniency. In these circumstances, the trial court properly imposed the life sentence without benefit of probation, parole, or suspension of sentence, and we deem this assignment to be without merit.
Finally, Green’s argument made in his pro se brief is misplaced. He argues that his fourth felony conviction and two of the predicate offenses had the possibility *184 of being punishable for less than twelve years, thus they failed to meet the requirement under La. R.S. 15:529.1 A(l)(c)(ii) that those offenses be punishable for “twelve years or more.” Green’s “fourth felony” and most recent conviction for burglary of a religious building carries a potential sentence up to twelve years. Additionally, “two of the prior felonies,” both for simple burglary, also carry potential sentences of up to twelve years. Clearly, all of those crimes have the potential for being punishable by at least twelve years and meet the requirement stated in the stated section of the Habitual Offender Law. We do not take the habitual offender statute to mean that the specified crimes must be punishable by no less than twelve years, but that there is a potential punishment of at least twelve years. Green’s sentence is, therefore, affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. The Bill of Information filed against Green listed the church as being the “Christian Journey Missionary Church.” The church was also identified at the trial as the “Christian Journey Missionary Baptist Church.”

. In an Order dated March 22, 2004, this court allowed the state to supplement the record with the stated transcript.