437 So.2d 758 (1983)
John SPITZER, Appellant,
v.
BARTLETT BROTHERS ROOFING and Risk Management Services, Inc., Appellee.
No. AN-399.
District Court of Appeal of Florida, First District.
September 12, 1983.
*759 Edward Hurt, of Hurt & Parrish, Orlando, and Bill McCabe, of Shepherd, McCabe & Cooley, Orlando, for appellant.
John A. Leklem, of Miller & Cooper, P.A., Orlando, for appellee.
ZEHMER, Judge.
Claimant, John Spitzer, appeals from an order of the deputy commissioner denying catastrophic loss benefits pursuant to § 440.15(2)(b), Florida Statutes (1979), and denying attorney's fees. We affirm in part and reverse in part.
On September 4, 1979, claimant fractured his heel bone when he fell from a truck he was loading in the course and scope of his employment. On September 29, 1981, claimant reached maximum medical improvement, with a rating of 30% permanent physical impairment of the left lower extremity resulting from the fracture. The evidence indicated that the injury did not involve any organic damage to the nervous system. A hearing was held on March 9, 1982, and by order entered July 15, 1982, the deputy denied the claim.
There is competent and substantial evidence in the record to support the deputy's finding that the claimant did not suffer a catastrophic loss under § 440.15(2)(b), Florida Statutes (1979),[1] as construed in E.B. Malone Corp. v. Johnson, 425 So.2d 622 (Fla. 1st DCA 1983). In that case, we found that the additional language in the 1979 version of the statute did not allow catastrophic loss benefits unless the injury involved a total loss of limb or total loss of use due to organic damage to the nervous system. We reasoned that any interpretation of catastrophic injury that included total loss of use of a limb for any other cause would render superfluous the more specific language requiring total loss of use of such member due to organic damage to the nervous system. Admittedly, our construction recognized that the added language resulted from an apparent typographical error, as evidenced by the reviser's note to the 1981 amendments and the fact that the same statute did not include the added language in the years immediately before and after 1979. That construction, however, is consistent with the spirit, purpose, and history of the statutory provision for catastrophic loss. Although the *760 deputy did not have the benefit of our decision in E.B. Malone Corp. when he entered his order on July 15, 1982, he correctly anticipated it. Accordingly, we find no error in the deputy's denial of catastrophic loss benefits.[2]
Before the hearing in this case, the employer and carrier voluntarily stipulated without qualification or reservation that the claimant was entitled to three months catastrophic loss benefits from September to December 6, 1979. The statute allows a maximum of six months benefits and the employer and carrier were only contesting claimant's right to the remaining three months benefits because of the claimant's improved physical condition and alleged ability to use his foot after December 6. Neither party questioned the validity of the stipulation at the hearing. After taking the case under advisement, however, the deputy commissioner rejected the stipulation on his own motion, finding it was based on a misconception of the law. Accordingly, the deputy's order also relieved the employer and carrier of any obligation to pay the stipulated three months benefits.
A deputy is not required to accept a stipulation if the facts proven are at substantial variance with the stipulation and if good cause is shown for modification of the stipulation. Woods v. Greater Naples Care Center, 406 So.2d 1172 (Fla. 1st DCA 1981). But stipulations of the parties are normally binding on the deputy, and a finding by the deputy that is at variance with a stipulation will ordinarily be overturned. Principe v. Mount Sinai Hospital, 156 So.2d 385 (Fla. 1963); Wright v. Golf Drive Residence, Inc., 412 So.2d 884, 887 (Fla. 1st DCA 1982). It is the policy of the law to encourage and uphold stipulations in order to minimize litigation and expedite the resolution of disputes, as is made abundantly clear by the Supreme Court in Steele v. A.D.H. Building Contractors, Inc., 174 So.2d 16 (Fla. 1965), at page 19:
One entering a stipulation relative to present facts should be sure of his ground before he executes the agreement and subsequently reaps benefits from it. If he is unsure, he should consult counsel at his elbow or should simply decline and rely on the determination of the deputy and the Full Commission. Such an agreement should neither be ignored nor set aside in the absence of fraud, overreaching, misrepresentation or withholding facts by the adversary or some such element as would render the agreement void.

* * * * * *
Stipulations have long been approved and encouraged as means of expediting the resolution of controversies. Dunscombe v. Smith, 139 Fla. 497, 190 So. 796. And there is as much reason to utilize them in cases arising under Workmen's Compensation Law as in other disputes, if not more, inasmuch as they affect directly the wages of the working man and delay consequently deprives him and his family immediately of the meat and bread to sustain them. (Emphasis supplied)
See also, City of Vero Beach v. Thomas, 388 So.2d 1374, 1376 (Fla. 1st DCA 1980).
In this case, there is no suggestion of fraud, overreaching, misrepresentation, or withholding of facts by the adversary as would render the stipulation void. The employer and carrier voluntarily stipulated to a partial resolution of the disputed claim with full knowledge of the disputed facts and the unsettled meaning of the redundant language in the statute that was still open to dispute, at least until our decision in E.B. Malone Corp. v. Johnson, supra. The stipulation partially resolved disputed issues of law as well as fact. It was not rejected because inconsistent with clear, undisputed facts but because the deputy perceived on his own that the employer and carrier had misconceived the applicable law.
When a party agrees to a stipulation for benefits in the face of uncertainty as to the *761 meaning of the law, the deputy commissioner should not be permitted to reject the stipulation because he thereafter, on his own motion, decides that question of law contrary to the stipulation. The deputy's adjudication should be limited to those issues and benefits still in dispute between the parties. A contrary conclusion would defeat the salutary purpose and policy underlying and encouraging the usual binding effect of stipulations. The deputy erred in rejecting the stipulation in this case.
Under the peculiar circumstances here involved, we find no reason to disturb the deputy's denial of attorney's fees to claimant under § 440.34(2)(b), Florida Statutes (1979), on grounds of the employer's bad faith.
Accordingly, that portion of the order rejecting the stipulation to three months catastrophic loss benefits is REVERSED. In all other respects, the order is AFFIRMED.
BOOTH and LARRY G. SMITH, JJ., concur.
NOTES
[1] Section 440.15(2)(b), Florida Statutes (1979), provides in pertinent part:

Notwithstanding the provisions of paragraph (a), an employee who has sustained the loss of an arm, leg, hand, or foot, or total loss of use of such arm, leg, hand, or foot, or total loss of use of such member because of organic damage to the nervous system, or has lost the sight of both eyes shall be paid temporary total disability of 80 percent of his average weekly wage until such employee has completed his training in the use of artificial members or appliances as necessary and completed training or education under a rehabilitative program pursuant to s. 440.49, if provided. In no event should the increased temporary total disability compensation provided for in this paragraph extend beyond 6 months from the date of injury.
The emphasized language was added in the 1979 amendment and deleted in 1980.
[2] E.B. Malone v. Johnson, supra, was recently followed in Lavin v. Alton Box Board Co., 431 So.2d 202 (Fla. 1st DCA 1983).